UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KIM DENISE KRESIN,

    Plaintiff,                                             Civil Action No. 15-CV-13736

vs.                                                     HON. BERNARD A. FRIEDMAN

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.
_____/

**OPINION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS**

This matter is presently before the Court on cross motions for summary judgment [docket entries 12 and 17]. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing. For the reasons stated below, the Court shall grant plaintiff's motion, deny defendant's motion, and remand the case for further proceedings.

Plaintiff has brought this action under 42 U.S.C. § 405(g) to challenge defendant's final decision denying her application for Social Security disability insurance benefits. An Administrative Law Judge ("ALJ") held a hearing in April 2014 (Tr. 20-36) and issued a decision denying benefits in September 2014 (Tr. 8-16). This became defendant's final decision in August 2015 when the Appeals Council denied plaintiff's request for review (Tr. 1-3).

Under § 405(g), the issue before the Court is whether the ALJ's decision is supported by substantial evidence, which is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938). In making this determination the Court does not review the record de novo,

and it may not weigh the evidence or make credibility findings. If supported by substantial evidence, defendant's decision must be upheld even if substantial evidence would have supported a contrary decision and even if the Court may have decided the case differently in the first instance. *See Engebrecht v. Comm'r of Soc. Sec.*, 572 F. App'x 392, 396 (6th Cir. 2014).

At the time of her April 2014 hearing, plaintiff was 56 years old. She has a high school education and relevant work experience selling fishing equipment and doing construction, catering, and auto glass jobs (Tr. 123, 148). Plaintiff claims she has been disabled since June 1, 2011, due to encephalopathy, panic disorder with agoraphobia, bipolar disorder, and anxiety disorder (Tr. 142, 147). The ALJ found that plaintiff had anxiety and depression from June 1, 2011, through December 31, 2011, when her insured status expired, but that these impairments were non-severe and plaintiff was therefore not disabled during this seven-month period. The ALJ noted that in October 2013 plaintiff applied for Supplemental Security Income ("SSI") benefits and that that application was granted because plaintiff "met a listing" (Tr. 11).[1] The issues in the present case are whether substantial evidence supports the ALJ's determinations that (1) plaintiff's only medically determinable impairments from June 1 to December 31, 2011, were anxiety and depression, and (2) these impairments were non-severe, meaning they were slight abnormalities "that would have no more than a minimal effect on an individual's ability to work" (Tr. 12, citing 20 C.F.R. § 404.1521).

Having reviewed the record and the parties' briefs, the Court concludes that the ALJ's decision in this matter is not supported by substantial evidence for the following reasons.

---

[1] The basis for defendant's decision granting the SSI application does not appear in the record. However, a psychologist who reviewed plaintiff's SSI application on behalf of the Disability Determination Service in October 2013 opined that as of May 2013 plaintiff met Listing 12.04 (Affective Disorders) (Tr. 45).

2

First, it is not apparent that the ALJ considered all of the evidence from the relevant seven-month period. The ALJ summarized the documentary evidence from this time frame as follows:

> The record contains little evidence dated between June 1, 2011 and December 31, 2011. The evidence from that period is from the claimant's prior applications for benefits and no new and material evidence was submitted for the claimant's present claim.
>
> On June 9, 2011, the claimant was doing very well at work[2] and taking her medications as prescribed (Previous Folder medical records from Community Care Services, page 64). By October 2011, she had decided to stop taking her medications, but she continued to work, planned a family trip, and was social with her employees (Previous Folder medical records from Community Care Services, page 44).

(Tr. 15.) The ALJ does not explain what "previous folder" he was referring to or which records from that previous folder he reviewed. However, defendant recently supplemented the record in this case with approximately 100 pages of "prior folder medical evidence" (Tr. 541-642), 84 pages of which are records from Community Care Services ("CCS") from February 2011 through September 2012 where plaintiff received psychotherapeutic and psychiatric care (Tr. 541–624).

To support his finding that plaintiff's anxiety and depression were non-severe during the relevant time period, the ALJ cited two entries from the CCS records. The ALJ's summary of these entries is both incomplete and fails to show he took into account other entries from the CCS records suggesting plaintiff's mental impairments were in fact more serious than "non-severe." The ALJ stated that "[o]n June 9, 2011, the claimant was doing very well at work and taking her medications as prescribed" and that in October 2011 plaintiff "had decided to stop taking her

[2] The ALJ noted that while plaintiff worked during this time period, her earnings were too low to constitute substantial gainful activity (Tr. 14). Evidence elsewhere in the record indicates that plaintiff worked seasonally at a boat dock/bait store (Tr. 123, 601).

medications, but she continued to work, planned a family trip, and was social with her employees" (Tr. 15). However, the June 9, 2011, entry also states that "we talked about other times when she stopped medication and the eventual decompensation" (Tr. 597), and the October 28, 2011, entry does not state plaintiff "was social with her employees" but that "[s]he does have plans to keep social with some of her employees" (Tr. 584). More importantly, the ALJ overlooked or disregarded other entries from the CCS records which suggest a greater level of impairment than "non-severe." For example, several entries show that throughout 2011 plaintiff was prescribed medications for depression and anxiety (Lamictal, Prozac, and Trazodone) (Tr. 562, 613), and that by February 2011 she had been diagnosed with major depressive disorder, panic disorder with agoraphobia, and generalized anxiety disorder (Tr. 612). These diagnoses and medications remained unchanged as of February 2012 (Tr. 561). The doctor's summary in February 2011 was that plaintiff "is a continuing client with symptoms/behaviors of depression, panic attacks and generalized anxiety. She continues medication reviews and medications. Her symptoms/behaviors have increased recently, possibly due to the season and not working" (Tr. 612). Plaintiff's therapist noted in February 2011 that plaintiff's "[d]epression 'comes and goes' with symptoms/behaviors – quiet, stays in bed, doesn't eat, doesn't answer the phone – this comes and goes about 2 times per week, although she feels it coming and does breathing exercises so it doesn't incapacitate her. It's possible she has these symptoms more in the winter" (Tr. 614). In February 2012, less than two months after her insured status expired, plaintiff's therapist noted that plaintiff was again not taking her medications, and that plaintiff rated her depression, panic attacks, and anxiety at ten on a ten-point scale (Tr. 570). On remand, the ALJ must review all of the CCS records, not just the two entries he cited, and reassess whether plaintiff's mental impairments during the relevant time period were

merely "slight abnormalit[ies] that minimally affect[] work ability regardless of age, education and experience." *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir.1988).[3]

From these records, it is also apparent that the ALJ erred in finding that plaintiff suffered only from "anxiety and depression" during the relevant time period. As noted above, the CCS records from this period show diagnoses from early 2011 and early 2012 of major depressive disorder, panic disorder with agoraphobia, and generalized anxiety disorder (Tr. 561, 612). On remand, the ALJ must review all of the records from the relevant time period, question plaintiff about her condition during that time period, and reevaluate whether plaintiff's only impairments at that time were "anxiety and depression."

On remand the ALJ must also consider the side effects of plaintiff's medications. As noted, the CCS records indicate that plaintiff was prescribed Lamictal, Prozac, and Trazodone. These medications have known side effects, including insomnia, dizziness, and drowsiness. *See* https://www.drugs.com/sfx/[drug name]-side-effects.html. The ALJ neglected to develop the record as to this medically and vocationally significant issue. The ALJ asked plaintiff no questions about her medications or any side effects she experienced during the relevant time period. The Sixth Circuit has held that the ALJ must evaluate "[t]he type, dosage, effectiveness, and side effects of any medication" as part of the process of determining the extent to which side effects impair a claimant's

---

[3] The ALJ found alternatively that if plaintiff's mental impairments were severe, she was nonetheless not disabled during the relevant time period because the VE testified to the existence of jobs that could be performed by a person capable of doing "simple, routine, repetitive, low-stress" work (Tr. 16). This conclusion is not supported by substantial evidence for the same reasons explained elsewhere in this opinion, namely, the ALJ's failure to consider all of the evidence, his failure to determine whether plaintiff has more impairments than simply "anxiety and depression," his failure to consider plaintiff's medication side effects, and his allowing plaintiff to represent herself at the hearing. Therefore, notwithstanding the ALJ's alternative finding, the case must be remanded for further proceedings.

capacity to work. *Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 532 (6th Cir. 2014) (quoting 20 C.F.R. § 416.929(c)(3)(i)-(vi)). Further, hypothetical questions to vocational experts must account for medication side effects. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 789-90 (6th Cir. 2009). On remand, the ALJ must (1) determine which medications plaintiff was taking during the relevant time period, (2) make findings as to the nature and extent of these medications' side effects, if any, and (3) consider these findings in assessing whether plaintiff had severe impairments during the relevant period. If a severe impairment is found, the ALJ must include plaintiff's medication side effects in determining her residual functional capacity and fashioning hypothetical questions to the vocational expert, as he proceeds past Step Two in the disability evaluation process.

On remand, the ALJ must conduct another hearing at which plaintiff is represented. At the time of her April 2014 hearing, plaintiff had already been found to be per se disabled under Listing 12.04 (Affective Disorders) (Tr. 45). The record contains extensive evidence showing that plaintiff has suffered from mental illness since 2006. *See, e.g.,* DDS summary of plaintiff's "long hx of psych illness" (Tr. 40-43). At the hearing, plaintiff was obviously deranged. She told the ALJ she is 6'-4" and weighs 537 pounds (Tr. 25), when in fact she is 5'-5" or 5'-7" and weighs 145 or 160 pounds (Tr. 313, 475); she could not remember her address and told the ALJ she was confused (Tr. 27, 32); when the ALJ asked who had driven her to the hearing, plaintiff stated it was "[m]y friend, . . . [m]y daughter-in-law – son-in-law," and finally settled on father-in-law, "I just call him that because he's my friend" (Tr. 28-29); and plaintiff stated she cannot drive but she could not remember who told her that (Tr. 27). After approximately four minutes of attempting to question plaintiff, the ALJ turned his attention instead to the VE (Tr. 29). Under these circumstances, it was

improper for the ALJ to proceed with the hearing, despite plaintiff's waiver of her right to be represented, as she was plainly incompetent to waive that right (Tr. 23-24).[4]  Had an attorney or other representative been present, he/she could have questioned, or attempted to question, plaintiff specifically about her condition during the relevant time period, including her experiences with medication side effects, if any.  An attorney or other representative might also have been able to gather additional evidence concerning plaintiff's condition during the relevant time period by, for example, serving the CCS personnel with interrogatories to obtain further insight into her condition at that time and ensuring that all relevant medical records had been obtained.  Unrepresented, plaintiff managed to provide only irrelevant, irrational testimony.[5]  Even if it was permissible for

---

[4] Plaintiff's incompetency and helplessness was also noted by the Social Security intake worker who met with plaintiff when she filed the disability report for the instant application in October 2013.  The Social Security worker noted plaintiff had difficulty, among other things, with hearing, reading, understanding, being coherent, concentrating, talking, and answering.  The Social Security worker commented that plaintiff

> could not walk faster than a snail's pace.  She was wearing eyeglasses.  Her speech was extremely slurred.  It was difficult for her to get out her name or DOB.  She rocked back and forth slightly during the interview and was staring off unaware of what was going on.  Her memory was very poor.  She was accompanied by a social worker from CCS.  She could not write or barely hold a pen.

(Tr. 144.)

[5] For example, in addition to claiming she is 6'-4" and weighs 537 pounds (Tr. 25), plaintiff answered as follows when the ALJ asked her to explain the record entry indicating she had "lost the boat ramp [job]":

> The City of Ecorse – I don't know how to explain how they took it.  Oh, I – I'm confused.  They – I put the money in there and they said they couldn't find the money.  So, they said that I stole $200 from them and I don't steal from anybody.  I've ran that boat ramp for six years and I love my customers and they're like no way would you do that.  So, they – I hate to say this, but they're the ones that took the

the ALJ to proceed, he had a special duty to develop the record, a duty he did not discharge in this case. *See Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986), citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir.1983) ("When a disability claimant is not represented by counsel at the administrative hearing, the ALJ has a special duty to ensure that a full and fair administrative record is developed."). In the present case, plaintiff was clearly unable to provide the ALJ with any pertinent information about her condition during the relevant time period, and the ALJ made little, if any, effort to elicit any such information from plaintiff or from plaintiff's care providers at CCS. This error must be corrected by conducting another hearing at which plaintiff is represented. Accordingly,

IT IS ORDERED that defendant's motion for summary judgment is denied.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted and this matter is remanded for further proceedings pursuant to 42 U.S.C. § 405(g) to correct the errors identified above.

_s / Bernard A. Friedman_____
BERNARD A. FRIEDMAN
SENIOR UNITED STATES DISTRICT JUDGE

Dated: August 23, 2016
         Detroit, Michigan

---

boat ramp away from me.

(Tr. 32.)

8